# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| SHARON INGRAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CV414-206 |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Alleging disability due to migraine headaches, diabetes mellitus, anxiety, depression, chiari malformations, dizziness, and numbness in her arms and legs, plaintiff Sharon Ingram seeks judicial review of the Social Security Commissioner's denial of her application for Disability Insurance benefits (DIB). Doc. 11 at 2.[1] That denial followed her exhaustion of administrative remedies, so her claims are now ripe for judicial review.

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at Doc. 10.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. Id. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. Id. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." Id. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. Id. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform

2

her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

"For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because [Ingram's] last insured date was December 31, 2010 [(tr. 162)], her DIB appeal requires a showing of disability on or before that date." *Moore*, 405 F.3d at 1211.

## II. ANALYSIS

Ingram filed for DIB on December 5, 2010, alleging a disability onset of August 19, 2008. Tr. 12. Following administrative denial, she attended and testified at a hearing on November 8, 2012 before the ALJ, who later denied her application. *Id.* Although the ALJ determined that Ingram had not engaged in substantial gainful activity from her alleged onset until her date-last-insured (Tr. 14), he found no severe impairments at step two and thus denied her application. Tr. 19.

Ingram argues that's error. Doc. 11 at 5. She contends that a finding of "not severe" is reserved for "only the most trivial" impairments and that record evidence shows her headaches far exceed that threshold. *Id.* at 6 (citing *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986)). In particular, Ingram criticizes (1) the "great weight" placed on her primary care physician's January 2011 opinion that she suffered no muscle problems from neurological impairments (doc. 11 at 6; tr. 17); and (2) the ALJ's decision to disregard the 2011 opinions of her treating neurologist and neurosurgeon. Doc. 11 at 6.

The Commissioner notes simply that during the relevant time period (from the onset of disability to the date last insured), nothing in the record supports a severity finding for Ingram's headaches. Doc. 12 at 5. What evidence does support Ingram's claim all dates to *after* her date last insured and so, says the Commissioner, the ALJ properly gave it no weight (or, at worst, committed harmless error). *Id.* at 10.

It's true, as Ingram points out, that:

> [w]hile the regulations use terms like "severe" and "significant," the step-two threshold is not a high one. Step two is "designed to screen out only clearly groundless claims." *Jones v. Astrue*, 2011 WL 1587731 at * 7 (S.D. Ga. March 29, 2011). It screens out

4

"those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton v. Bowen*, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987) (quoting *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)); *see Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."); 70C AM.JUR.2D SOCIAL SECURITY AND MEDICARE § 2006 (2011) (all that must be shown is a *de minimis* impairment or combination of impairments "which are of medical severity sufficient to significantly limit physical or mental ability to do basic work activities").

Indeed, the Eleventh Circuit has described the step-two test as the "slight abnormality" test. *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987) (per curiam). Under that test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* It "allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant's burden is "mild." *Id.* Too, "the application of a threshold severity regulation that is greater than *de minimis* is invalid under the terms of section 205 *et seq.* of the Social Security Act." *Stratton*, 827 F.2d at 1453. That is because "[a]n overly stringent interpretation of the threshold severity requirement violates the statutory standard for disability by precluding an administrative determination of the crucial statutory question: Whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience." *Id.*

*Hinkley v. Astrue*, 2011 WL 2144624 at * 6-7 (S.D. Ga. May 31, 2011) *adopted*, 2011 WL 2441831 (S.D. Ga. June 16, 2011).

Nevertheless, the burden remains Ingram's to make that "*de minimis*" showing. *See Moore*, 405 F.3d at 1211. As importantly, for DIB claimants like Ingram, she must meet that burden for the time period "on or before the last date for which she [was] insured." *Id.* If she only puts forth evidence of a severe impairment *after* her date last insured, the Court must affirm the ALJ's denial. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) ("If a claimant becomes disabled after he has lost insured status, his claim must be denied despite his disability."); *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012) (same).

The ALJ concluded that Ingram failed to show that her headaches precluded work from her disability's alleged onset until her date last insured. He first noted Ingram' testimony that she received unemployment benefits for the two years after August 2008 -- almost the entire time between her alleged disability onset and date last insured. Tr. 15, 41-42. That meant Ingram represented to the State that she was

"ready, willing, and able to work but unable to find employment," during the same time period that she now says she was "unable to sustain fulltime employment." Tr. 15. The ALJ found that inconsistency eroded her credibility. *Id.*

He then found that the medical evidence showed Ingram's headaches are "associated with the onset and progression of her menstrual period," and have "been ongoing since at least 2001." *Id.* at 15-16; *see, e.g.*, Tr. 249 (March 2007 notes by examining physician Dr. Frances Decker noting that Ingram reported having "menstrual migraines for years," and that they "only [occur] around the time of her period"). As a result, Ingram "engage[d] in substantial gainful activities," until 2008, when she started collecting unemployment benefits. Tr. 16, 40-42. Looking only to medical evidence of impairments pre-dating the last-insured date, the ALJ noted that:

> [a]t [a] March 2010 office visit with Dr. Decker, the claimant complained of a two day headache that was unresponsive to Topamax, and she stated that her headaches typically occur around her period (Exhibits 2F/12 and 7F/9). The claimant presented to the emergency room with headaches on August 5 and 6, 2010 (Exhibit 4F/13-28). In November 2009, the claimant stated that her birth control pill prevented her from having a single headache (Exhibit 7F/13), but at the next visit, she stated that the pills exacerbated her

7

> headaches (Exhibit 7F/14). The claimant admitted to Dr. Decker that she took Xanax to manage[] her migraine headaches. Further, she stated that Xanax also helped occasional anxiety. (Exhibit 7F/14).

*Id.*

The ALJ placed great weight on a neurological questionnaire by Ingram's treating neurologist, Dr. W. Scott Bohlke, whose "longitudinal treatment relationship with [Ingram]," the ALJ felt, "place[d] him in the best position to evaluate her functional capacity." Tr. 18. That evaluation -- conducted less than two weeks *after* Ingram's date last insured -- found no motor impairment from neurological causes. Tr. 309-11. It did not address Ingram's pain from headaches, or any functional impairments she suffered. But because the ALJ also found the evaluation "necessarily addresse[d] the period prior to the date last insured, during which Dr. Bohlke treated [Ingram]," he afforded it great weight. Tr. 18.

By contrast, the ALJ gave no weight to the opinion of Dr. Michael Taormina, a neurologist who treated Ingram only *after* her date last insured, exactly because he only treated her during that demonstrably irrelevant time period. Tr. 18. But there is another opinion, that of

8

neurosurgeon Willard Thompson, which the ALJ failed to mention. Like Taormina, however, Thompson only treated Ingram after her date last insured and nothing in his notes indicates that the severity-related portion of his opinion applied to times before then.[1] *See* Tr. 557-58; *Goff ex rel. Goff v. Comm'r of Soc. Sec.*, 253 F. App'x 918, 921 (11th Cir. 2007) (substantial evidence supported ALJ "according no weight" to a doctor's opinion because it was "ambiguous as to whether [the opinion] related to" before the last insured time period).

On the basis of that record, the ALJ concluded that "[t]here does not appear to be any change in the severity, frequency, or duration of [Ingram's] headaches through her date last insured." Tr. 17. Put differently, he found that Ingram's headaches remained the same from 2008 to December 31, 2010 (when Ingram never worked), as they were from 2001 until 2008 (when Ingram worked). "Since there was no

---

[1] Ingram objects to the ALJ's supposedly contradictory treatment of Taormina and Thompson, whose records he discounted because they post-dated Ingram's date last insured, and Bohlke, whose January 2011 notes the ALJ credited. That objection carries no weight. Only Bohlke necessarily opined on matters in the relevant time period, and so despite his notes' date, they were relevant to a DIB determination. Taormina and Thompson's opinions, by contrast, gave no indication that they were anything but records of Ingram's conditions at the time of treatment, which in both cases came after her date last insured.

change . . . and she was able to work, the [ALJ] f[ound] that her migraine headaches have not functionally limited her abilities to perform substantial gainful activities. Consequently, her migraine headaches through her date last insured are nonsevere." *Id.*

Ingram only points to medical records from 2011 forward to bolster her severity claim. But as noted above, those records do not relate to the relevant time period (onset date - date last insured) and so cannot support a severity finding. *See Goff*, 253 F. App'x at 921. Without those, all that remains are (1) records from time periods irrelevant to Ingram's DIB application, (2) records showing that Ingram had migraines during the relevant time period no more severe than those she endured while employed (*see, e.g*, tr. 350 (ER records from August 2010 visit), and (3) the ALJ's negative credibility finding predicated on Ingram's receipt of unemployment benefits at the same time she now claims her headaches rendered her unable to work. Tr. 16. Faced with that, it is reasonable to conclude, as did the ALJ, that although Ingram's headaches occurred during her menstrual cycle for a long time, they only began to worsen and impinge on her ability to work beginning in 2011 and thus were not severe

prior to that point. *Cf. Harper v. Astrue*, 2010 WL 6897654 at * 9 (N.D. Fla. Sept. 30, 2010) (claimant's migraines were controlled by medications and thus not a severe condition where claimant only occasionally went to the ER for pain treatment, and "only had to leave work a couple of times" over the course of a given year due to their intensity). Since that conclusion is supported by substantial evidence, even given the low bar for severity findings, the Court cannot disturb it.

## IV. CONCLUSION

The ALJ's conclusion that Ingram is "not disabled," tr. 18, therefore should be affirmed and this case **DISMISSED**.

**SO REPORTED AND RECOMMENDED**, this 18th day of November, 2015.

                                        _____
                                        **UNITED STATES MAGISTRATE JUDGE**
                                        **SOUTHERN DISTRICT OF GEORGIA**